## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY FULLER, | No. 4:24-CV-01618 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CABINETWORKS MICHIGAN, LLC, THE CABINETWORKS GROUP, and CABINETWORKS GROUP, INC., | |
| Defendants. | |

### MEMORANDUM OPINION

### JANUARY 31, 2025

In September 2024, Plaintiff Jerry Fuller filed a one-count complaint against Defendants, Cabinetworks Michigan, LLC, The Cabinetworks Group, and Cabinetworks Group, Inc., alleging a violation of the Fair Labor Standards Act ("FLSA").[1] This Memorandum Opinion resolves the three intertwined motions which are currently pending in this case. The Court grants Defendants' motion to stay determination of Fuller's motion for conditional certification pending resolution of the disputed arbitration agreement in this case and holds Defendants' motion to compel arbitration in abeyance until it can be resolved.

## I.    PROCEDURAL BACKGROUND

Defendants filed a motion to compel mediation/arbitration and to stay the case in November 2024, attaching a copy of the Dispute Resolution Program Agreement to

---

[1]    Complaint, Doc. 1.

which Fuller allegedly acknowledged receipt and later electronically signed.[2] The attached Dispute Resolution Program agreement (the "Agreement") only has Fuller's electronic signature acknowledging receipt, dated October 24, 2022, but the signature line itself is blank.[3] Defendants' Declaration also states that Fuller's execution of the Agreement on October 24, 2022, was "effective back to his original hire date in 2021" which was "memorialized in his WorkDay profile."[4]

Fuller filed a Brief in Opposition in December 2024, attaching Fuller's sworn declaration stating that: he no longer used the email address to which the Agreement was emailed during October 2022; he was denied access to that email address when he attempted to log in in 2024; he signed nothing resembling the Agreement during his June 2021 orientation and found nothing similar at his home; he did not receive or sign any Agreement through Workday, which "is a phone app that [he] can use to check [his] paystubs, time off and any lateness" but "has never been used to send [him] messages or documents;" and that he did not otherwise sign or agree to the Dispute Resolution Program and does not know how the typed, italicized version of his name was placed at the end of the document.[5] In response to these factual disputes, Defendants state in their reply brief that they have consented to Fuller's request for limited discovery and "consent to the Court's deferral of rulings on their Motion to Compel . . . and on

---

2    *See* Motion to Compel Mediation/Arbitration and to Stay the Case ("MTCA"), Doc. 6 at 2-3; Declaration, Doc. 6-2; Exhibits to Declaration, Doc. 6-3.
3    Exhibits to Declaration, Doc. 6-3 at 9.
4    Declaration, Doc. 6-2 ¶10.
5    Declaration, Doc. 10-2 ¶¶16-21.

Plaintiff's Motion for Conditional Certification until both parties can supplement the record following this limited discovery."[6]

Also in December 2024, Fuller filed a motion for conditional certification of two classes.[7] The first class is "[a]ll persons who have worked for Defendants as first level production supervisors from September 24, 2021 to the present."[8] The second class is "[a]ll persons who worked for Defendants as exempt hourly workers from September 24, 2021 to the present."[9]

Defendants never filed a brief in opposition to the motion for conditional certification. Before the time elapsed to file their opposition to this motion, however, Defendants filed a motion to stay "in response to Plaintiff's Motion for Conditional Certification."[10] This motion requests that "any decision on Plaintiff's Motion for Conditional Certification be deferred until after the Court has ruled on the Motion to Compel."[11] In response, Fuller points out that Defendants never filed any response to the motion for conditional certification within 14 days, but rather responded by filing a new motion, and therefore requests that the Court grant the motion for conditional class certification as unopposed.[12] As to the motion to stay, Fuller argues that the stay is

---

[6]    Reply Brief, Doc. 14 at 2.
[7]    Motion to Certify Class, Doc. 8.
[8]    *Id.*
[9]    *Id.*
[10]   Motion to Stay, Doc. 12 at 1.
[11]   *Id.*
[12]   Brief in Opposition, Doc. 15 at 1.

inappropriate because "it would delay indefinitely notice to the potential opt-in Plaintiffs while the statute of limitations continues to run on their claims."[13]

## II.    ANALYSIS

### A.    Motion to Compel Arbitration

Section Two of the Federal Arbitration Act provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable."[14] But the court only "make[s] an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."[15] "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue."[16]

In this case, the parties have agreed that deferring a ruling on the motion to compel arbitration is appropriate given that limited fact discovery on this issue is ongoing and that the making of this agreement appears to be disputed.[17] "This formal discovery, limited to the question of arbitrability, may then be followed by a renewed

---

[13]   *Id.*

[14]   9 U.S.C. § 2.

[15]   9 U.S.C. § 4.

[16]   *Id.*

[17]   Reply Brief, Doc. 14 at 2 ("For the limited purpose of establishing Plaintiff's assent to the arbitration agreement, and without waiving their rights under that agreement, Defendants have not objected to this request for limited discovery. Defendants hence consent to the Court's deferral of rulings on their Motion to Compel Mediation/Arbitration and to Stay the Case, and on Plaintiff's Motion for Conditional Certification until both parties can supplement the record following this limited discovery.").

motion to compel arbitration wherein both the moving and non-moving parties' arguments can be supported by a developed record."[18] Defendants' motion to compel arbitration shall be held in abeyance until the arbitrability issue can be resolved.[19]

### B.    Motion to Stay

As all parties agree, fact discovery is needed to resolve arbitrability here. Defendants therefore ask this Court to stay their response to Fuller's motion for conditional class certification until it has resolved the pending motion to compel arbitration.[20] To contextualize the dueling motions at play, the Court must lay out the procedural significance of the conditional certification motion to the FLSA collective action, the equitable factors ordinarily consulted in granting or denying a stay, and the Federal Arbitration Act ("FAA"), which precludes the discretionary weighing of such equitable factors. The Court grants Defendants' motion to stay because it is persuaded that the stay is required under Section 4 of the FAA.

"Under section 16(b) of the FLSA, 29 U.S.C. § 216(b), an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other 'similarly situated' employees. In order to become parties to a collective action under Section 16(b), employees must affirmatively opt-in by filing written

---

[18]    *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329 (3d Cir. 2022) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).

[19]    *See Jin v. Parsons Corp.*, 966 F.3d 821, 828 (D.C. Cir. 2020) ("[T]he proper procedure for the district court to follow, upon finding that a genuine dispute of material fact exists, is to hold the motion to compel arbitration in abeyance pending a trial on the issue of arbitrability. In this way, the motion remains pending until the arbitrability issue is decided. Once the final decision is reached, that decision is appealable.").

[20]    Motion to Stay, Doc. 12.

consents with the court."[21] "Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA."[22] "This two-tier approach, while 'nowhere mandated, . . . appears to have garnered wide acceptance."[23]

The first step, "conditional certification," applies a "'modest factual showing' standard, under which 'a plaintiff must produce some evidence, "beyond mere speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'"[24] This so-called conditional certification, however, is "not really a certification," but rather "the district court's exercise of its discretionary power, upheld in *Hoffman-La Roche v. Sperling*, to facilitate the sending of notice to potential class members,' and 'is neither necessary nor sufficient for the existence of a representative action under the FLSA."[25] This judge-made FLSA collective action conditional certification procedure originates in the Court's "procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."[26]

---

[21] *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Cir. 2013)

[22] *Id.*

[23] *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 n.5 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

[24] *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012).

[25] *Id.* at 536 (cleaned up) (citations and internal quotation marks omitted).

[26] *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

"At the second stage, with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'"[27] "This step may be triggered by the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by both. If plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action."[28]

"In determining whether to grant a motion to stay, this Court must consider four factors: (1) the length of the requested stay; (2) the hardship that the moving party would face in going forward with the litigation; (3) the injury that a stay would cause the non-moving party; (4) and whether a stay will simplify issues and promote judicial economy."[29]

The indefinite stay requested by Defendants could, as Fuller notes with concern, require some months to resolve after discovery, and possibly trial, of arbitrability.[30] Defendants also do not put forward any argument as to why denying the stay would cause them prejudice, nor does the Court perceive any. In contrast, Fuller could potentially face extraordinary hardship due to the stay because, due to the unique procedural posture of FLSA collective actions, the statute of limitations does not toll

---

[27] *Camesi*, 729 F.3d at 243 (quoting *Symczyk*, 656 F.3d at 193).

[28] *Id.*

[29] *Scicchitano v. Cnty. of Northumberland*, Civ. No. 4:14-CV-00852, 2015 U.S. Dist. LEXIS 158956, at *3 (M.D. Pa. Nov. 25, 2015).

[30] *Id.* (quoting *CTF Hotel Holdings, Inc. v. Mariott Int'l, Inc.*, 381 F.3d 131, 135 (3d Cir. 2004)); Brief in Opposition, Doc. 15 at 3-4, 6.

for putative class members with the filing of the complaint, but rather, with the receipt of notice.[31] Nor would the stay be likely to simplify the issues, since district courts wield broad discretion in the conditional certification inquiry[32] and the Third Circuit's "lenient" conditional certification standard generally does not analyze the "merits of the dispute" or "individualized defenses."[33] The motion has mixed implications on judicial economy as well: while an adverse arbitrability judgment rending Fuller's case moot would moot the whole case and render the sending of notices pointless,[34] "it lies within the discretion of a district court to begin its involvement [in case management] early, at the point of the initial notice," because a "trial court can better manage a major [collective action] if it ascertains the contours of the action at the outset."[35]

---

[31]  *Perez v. Express Scripts, Inc.*, Civil Action No. 19-cv-7752 (JXN) (ESK), 2022 U.S. Dist. LEXIS 134161, at *32 (D.N.J. Jul. 28, 2022); *see also Tyger v. Precision Drilling Corp.*, 832 F.App'x 108, 115 n.12 (3d Cir. 2020) (""The applicable statute of limitations is particularly significant in FLSA collective actions because, unlike with class actions under Federal Rule of Civil Procedure 23, an individual plaintiff's claim is not considered 'commenced' until he opts into the lawsuit."); *Genesis*, 569 U.S. at 76 (Because "respondent had not yet moved for 'conditional certification' when her claim became moot," there was "simply no certification decision to which respondent's claim could have related back.").

[32]  *Gauzza v. Prospect Med. Holdings, Inc.*, Civil Action No. 17-3599, 2018 U.S. Dist. LEXIS 184306, at *4 (citing *Symczyk*, 656 F.3d at 193 n.5) (as conditional certification is "'committed to the Court's "broad discretion,"'" "nothing requires the Court to grant conditional certification liberally, stingily, or anywhere between").

[33]  *See Symczyk*, 656 F.3d at 193 ("Under the 'modest factual showing' standard, a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.") (citations omitted); *Zavala*, 691 F.3d at 537 (explaining that at the "final certification" stage's "similarly situated" analysis, plaintiffs "may also be found dissimilar based on the existence of individualized defenses."); *Neal v. Air Drilling Assocs.*, No. 3:14-CV-1104, 2015 U.S. Dist. LEXIS 5554, at * (M.D. Pa. 2015) ("At the step-one inquiry, the court does not weigh the evidence, resolve factual disputes, or reach the merits of plaintiff's claims.").

[34]  *See Genesis*, 569 U.S. at 74-75 (quoting *Sosna v. Iowa*, 419 U.S. 393, 399-402 (1975)).

[35]  *Id.* at 171-72; *Halle v. West Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) ("A district court's early intervention in the preparation and distribution of notice to potential

In the ordinary case, the Court would balance these equities to decide the propriety of granting a stay on the conditional certification motion pending a determination of arbitrability, and the decision would likely be well within this court's discretion. But equitable discretion can be curtailed by explicit statutory command, and the Court is persuaded that the Federal Arbitration Act ("FAA") does so here as to Fuller.[36]

The Court agrees with Fuller that vague gestures to a "liberal national policy favoring arbitration" within the FAA are unpersuasive. As the Supreme Court recently instructed in *Morgan v. Sundance*, "the FAA's 'policy favoring arbitration' . . . is to make 'arbitration agreements as enforceable as other contracts, but not more so.'"[37] However, the error in *Morgan* was that the lower courts had misconstrued that policy to authorize "invent[ing] special, arbitration-preferring procedural rules."[38] Where a procedural rule is explicitly laid out in the FAA, applying it is far from the policy-

---

participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action.").

[36] This distinguishes Fuller from the now-absent potential opt-in FLSA collective action members. *See Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376-77 (5th Cir. 2016) (distinguishing cases involving the disputed validity of potential opt-in plaintiffs' arbitration agreements from those involving the disputed validity of the sole named plaintiff's arbitration agreement when considering whether to stay conditional notice pending resolution of the motion to stay arbitration); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 n.19 (5th Cir. 2019) (remarking in a collective action that "courts cannot compel individuals to arbitrate when they are yet to be identified and have not joined the suit"); *In re Ductile Pipe Fittings Direct Purchaser Antitrust Litig.*, Civ. No. 12-711, 2016 U.S. Dist. LEXIS 133206, at *7 (D.N.J. Sep. 28, 2016) (explaining that a motion to compel arbitration could not be resolved as to absent class members)

[37] 596 U.S. 411, 418 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

[38] *Morgan*, 596 U.S. at 418.

oriented judicial lawmaking warranting reversal in *Morgan*. So determining that a stay is mandatory does not run afoul of *Morgan* if FAA Section 4, which governs this case, says that the stay is mandatory. And it does.

Section 4 of the Federal Arbitration Act articulates a procedure for resolving a litigant's refusal to arbitration under a written agreement, which presents the district court with "two distinct paths" to resolving a motion to compel.[39] "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement;" in the absence of factual disputes, this calls for applying the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6).[40] The motion to compel arbitration is denied where "[(1)] the complaint and its supporting documents were not clear enough on their face to establish that the parties agreed to arbitrate or [(2)] [the disputing party] otherwise 'come[s] forth with reliable evidence that is more than a "naked assertion that it did not intend to be bound" by the arbitration agreement.'"[41] Where "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof;" this means that after limited discovery into factual disputes, the Court applies the Rule 56

---

[39] *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (summarizing *Guidotti*, 716 F.3d 764).

[40] 9 U.S.C. § 4; *Guidotti*, 716 F.3d at 776 ("[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that . . . a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery.").

[41] *Robert D. Mabe, Inc.*, 43 F.4th at 329 (quoting *Guidotti*, 716 F.3d at 774).

summary judgment standard and allows the arbitrability dispute to proceed to trial if necessary.[42]

In Sections 2, 3, and 4 of the FAA, the Supreme Court has stated that the FAA's use of the term "shall" "leaves no place for the exercise of discretion by a district court."[43] This is equally true as to Section 4's second "path," which requires that where arbitrability is in factual dispute, "the court *shall* proceed summarily to the trial thereof."[44] "The object is always to decide quickly—summarily—the proper venue for the case . . . so the parties can get on with the merits of their dispute."[45]

In the unpublished opinion of *Silfee v. Auto. Data Processing, Inc.*, the Third Circuit interpreted this same "shall" language in Section 4 to mean that "after a motion to compel arbitration has been filed, the court must 'refrain from further action' until it determines arbitrability."[46] The Third Circuit applied this rule harshly in *Silfee*, holding that "the role of the court 'is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the

---

[42] 9 U.S.C. § 4; *Guidotti*, 716 F.3d at 776 ("If the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before" deciding the motion to compel.) (internal quotation marks omitted).

[43] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (discussing FAA Sections 2, 3, and 4); *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (explaining that Section 3's "use of the word 'shall,'" as in "neighboring sections of the FAA," 'creates an obligation impervious to judicial discretion") (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)).

[44] 9 U.S.C. § 4.

[45] *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977-78 (10th Cir. 2014).

[46] 696 F. App'x 576, 577 (3d Cir. 2017).

arbitrator.'"[47] The *Silfee* court therefore reversed the dismissal of a district court when it ruled on a motion to dismiss before the disputed issue of arbitrability had been resolved, explaining that the "District Court erred in bypassing th[e] § 4 inquiry to rule on [defendant's] motion to dismiss."[48] Instead, "the standards laid out in *Guidotti* are truly dichotomous," and "[d]istrict courts may not alter this sequencing" of resolving arbitrability by reaching any other issue.[49]

Applied at its word, *Silfee* prohibits the Court from reaching any of Fuller's motions until Section 4's arbitrability "sequencing" has run its course.[50] *Silfee* was the second unpublished Third Circuit decision interpreting Section 4's "sequencing" to abrogate any judicial discretion.[51] And the three out-of-circuit decisions cited by the *Silfee* court were equally strict about this inquiry. In *Republic of Nicaragua v. Standard Fruit Co.*, the district court was reversed for granting summary judgment on the merits before ruling on the pending motion to compel.[52] In *Sharif v. Wellness Int'l Network, Ltd.*, the Seventh Circuit reversed the district court for resolving a motion to change

---

[47]  *Id.* (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).
[48]  *Id.*
[49]  *Id.* at 578.
[50]  Some district courts have exercised caution in applying "strong language" of *Silfee* to its fullest extent, for example reading *Silfee* in tandem with other Third Circuit decisions to reason that a district court may apply a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) before reaching the motion to compel arbitration. *Castillero v. Xtend Healthcare, LLC*, Civil Action No. 22-02099 (GC) (DEA), 2023 U.S. Dist. LEXIS 212028, at *26-27 (D.N.J. Nov. 29, 2023). This, in conjunction with *Silfee* being an unpublished decision, is why the Court has discussed this issue in greater depth.
[51]  *See Edmondson v. Lilliston Ford*, 593 F.App'x 108 (3d Cir. 2013).
[52]  *Standard Fruit Co.*, 937 F.2d at 471.

venue before resolving the motion to compel arbitration.[53] Most critically, in *Reyna v. International Bank of Commerce*, the Fifth Circuit reversed the district court because it was "required to consider the arbitrability of [the named plaintiff]'s claim before conditionally certifying the collective" in a FLSA action.[54]

Silfee cited *Reyna* for the proposition that "[a]rbitrability is a 'gateway' issue, so 'a court should address the arbitrability of the plaintiff's claim *at the outset* of the litigation."[55] It therefore appears to signal approval of *Reyna*'s application of Section 4 to preclude ruling on a FLSA conditional certification motion instead of staying that motion pending the resolution of the named plaintiff's disputed arbitration agreement. Fuller attempts to distinguish *Reyna* by stating that there was no factual dispute as to the named plaintiff's arbitration agreement there but does not explain the legal relevance of this distinction.[56] It is true that if the Court had any equitable discretion here, Fuller's argument would weigh against granting a stay by showing the stay's protracted length. But Fuller's distinction is immaterial because, as discussed, the FAA has removed that discretion. As the Court explained, *Silfee* instructs that district courts may "bypass" no part of Section 4's "sequencing," whether that deviation comes at the first or second path identified in *Guidotti*.

---

[53]  376 F.3d 720, 726 (7th Cir. 2004).
[54]  839 F.3d at 376-78.
[55]  *Silfee*, 696 F. App'x at 577 (quoting *Reyna*, 839 F.3d at 376).
[56]  Brief in Opposition, Doc. 15 at 6 ("Even if *Reyna v. International Bank of Commerce* were good law in this Circuit, it is not on point" because "*Reyna* relied on the fact that the arbitration agreement with the Plaintiff 'indisputably exists.'") (quoting *Reyna*, 839 F.3d at 377-78).

Fuller also objects that the "sole consequence of conditional certification is the sending of court-approved written notice to employees"[57] and that conditional certification is, despite its name, "not really certification;"[58] "it is actually . . . the [facilitation of] sending of notice to potential class members."[59] "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress."[60] Conditional certification is borne of this power: it is an exercise of "interstitial judicial lawmaking or ad hoc district court discretion" necessitated by the FLSA's failure to articulate the procedures for carrying out Section 216(b)'s statutorily mandated opt-in notices.[61]

However, the supervisory origins of conditional certification do not render district courts' administration of the procedure beyond reproach. Summarizing binding Supreme Court precedent, the Third Circuit has instructed that the "exercise of inherent authority must satisfy two requirements: (1) it 'must be a reasonable response to the problems and needs confronting the court's fair administration of justice,' and (2) it 'cannot be contrary to any express grant of or limitation on the district court's power

---

[57] Brief in Support, Doc. 9 at 3 (quoting *Stansbury v. Barrick Enters.*, No. 1:22-cv-00342, 2024 U.S. Dist. LEXIS 56918, at *11 (M.D. Pa. Mar. 28, 2024) (thereinafter quoting *Henesis*, 569 U.S. at 75)).

[58] Brief in Opposition, Doc. 15 at 4 (citing *Zavala*, 691 F.3d at 536).

[59] *Zavala*, 691 F.3d at 536 (citations omitted).

[60] *United States v. Hasting*, 461 U.S. 499, 505 (1983).

[61] *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018)).

contained in a rule or statute.'"[62] Applying this rationale in the FAA context specifically, the Third Circuit stated in the unpublished decision of *Edmondson v. Lilliston Ford, Inc.* that although it is "mindful of the District Court's authority to manage its own docket, that authority is, in this instance, secondary to the clear Congressional intent behind the FAA 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"[63] So because the Court's exercise of supervisory authority cannot be contrary to the FAA's explicit statutory mandates, the unique procedural backdrop of FLSA conditional certification does not remove it from the purview of Section 4. Reaching the conditional certification motion would impermissibly bypass Section 4.

Finally, the only live controversy permitting the Court to reach the conditional certification motion at this pre-opt-in stage is Fuller's FLSA claim.[64] For this reason, *Reyna* concluded that deciding a FLSA conditional certification motion prior to a pending motion to compel arbitration "would present a justiciability issue: a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff

---

[62]   *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)).

[63]   593 F.App'x at 112 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

[64]   *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [FLSA] action unless he gives consent in writing to become a party and such consent is filed in the court in which such action is brought."); *Genesis*, 569 U.S. at 75 (explaining that potential collective action members who had not opted in had no standing because they were neither parties to the suit nor had any "independent legal status" in the proceedings); *Halle*, 842 F.3d at 224 (Instead of being triggered by "a complaint containing FLSA collective action allegations," "the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs.").

was bound to arbitrate and was therefore barred from bringing it in court in the first place."[65]

While weighing the benefits of granting conditional certification early against the risk that the certification proves futile could be a close question, granting the stay has more to recommend it than academic hair-splitting. The reason for Section 4's strict "sequencing" is the recognition that where arbitration agreements control, litigants should be moved "out of court and into arbitration as quickly and easily as possible."[66] Section 4 is designed to ensure that "courts process the venue question quickly so the parties can get on with the merits of their dispute in the right forum."[67] Ruling on other motions filed by the plaintiff in the interim while the motion to compel is pending may distract from the efficient resolution of the arbitration dispute: the parties would have to brief the motion, the Court would have to rule on it, the defendants would have to compile and produce employee contact information to the plaintiffs, and the parties would have to litigate the contents of the notice.[68]

The United States Court of Appeals for the Sixth Circuit's unpublished decision in *Tassy v. Lindsay Entertainment Enterprises*, in which the district court failed to resolve the disputed arbitration question for over a year, is a cautionary tale.[69] While the motion to compel was pending, the district court conditionally certified the

---

[65]    *Reyna*, 839 F.3d at 377.
[66]    *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22-24.
[67]    *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).
[68]    All of these drags on the resolution of the arbitration issue are present even assuming that no discovery is conducted on the named plaintiff's claims in the meanwhile.
[69]    Nos. 17-5338/17-5375, 2018 U.S. App. LEXIS 4466, at *1-2 (6th Cir. Feb. 22, 2018).

plaintiff's FLSA class.[70] Although it lacked jurisdiction to directly decide whether the grant of conditional certification was in error and considered only the denial of defendant's motion to stay proceedings and compel arbitration,[71] the *Tassy* court held that "[t]he district court's failure to 'summarily' determine whether the parties formed an agreement to arbitrate was error," and noted with frustration: "[t]aking over a year to resolve [the] motion to compel was not 'quick.'"[72]

Accordingly, the Court will stay Fuller's motion for conditional certification pending the resolution of arbitrability, as required by Section 4 of the FAA, so that the parties may speedily and efficiently resolve whether Fuller is bound by an arbitration agreement.

### C.    Motion to Compel Class Certification

The motion to compel class certification will therefore be stayed pending resolution of Defendants' arbitration defense. That resolves the need to rule on the motion for the time being. But it leaves one outstanding argument which will become relevant should Fuller prevail on the arbitrability dispute: that Fuller's motion for class certification is unopposed. Fuller argues that Defendants failed to file a brief in opposition within the 14 days allotted to them under Local Rule 7.6, and therefore the motion is unopposed.[73] Local Rule 7.6 does state that parties failing to file a brief in

---

[70]    *Id.*
[71]    *Id.* at *2 n.1.
[72]    *Id.* at *2.
[73]    Brief in Opposition, Doc. 15 at 1.

opposition within fourteen days "shall be deemed not to oppose such motion."[74] However, the Defendants specifically state in their motion to stay that it is filed "in response to Plaintiff's Motion for Conditional Certification."[75]

Even if Defendants' filing does not strictly comply with the letter of the Local Rules because it is not a "brief in opposition," deeming the motion for conditional certification unopposed would be overly harsh. For example, the Third Circuit has declined to hold that district judges may grant a motion to dismiss as unopposed simply for violating briefing schedules set forth in local rules, and specifically Middle District of Pennsylvania Local Rule 7.6, without first considering the *Poulis* factors.[76] The sanctions for noncompliance with the local rules rest within the district court's discretion. As the motion to stay indicates that it is filed in response to Fuller's Motion for Conditional Class Certification and seeks the relief of disposing of that motion at a later time, the Defendants clearly acted in good faith in attempting to comply with the Local Rules. There is no reason to deem the motion unopposed.

### D.    Equitable Tolling

"[J]udges have the power to sua sponte raise equitable defenses."[77] In his papers, Fuller has raised the concern of "excessive delay in reaching conditional certification

---

[74]  M.D. Pa. L.R. 7.6.
[75]  Motion to Stay, Doc. 12.
[76]  *See Hernandez v. Palakovich*, 293 F.App'x 890, 895 (3d Cir. 2008); *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The *Poulis* factors are inapplicable in this context, but *Hernandez* nevertheless demonstrates the caution courts should exercise when deeming motions unopposed under local rules, especially for minor or technical errors.
[77]  *Lassiter v. City of Phila.*, 716 F.3d 53, 57 (3d Cir. 2013) (citing *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001)).

to the great detriment of the potential opt-in Plaintiffs, whose claims are expiring on a weekly basis."[78] Although Fuller raised this concern in opposition to Defendant's motion to stay, it is equally applicable to the judicial delay caused by the pendency of that motion and this Court's decision on it.

FLSA's opt-in procedure distinguishes FLSA from the opt-out rules governing Rule 23 class actions. "Unlike the claims of members of a potential Rule 23 class, the claims of potential opt-ins to an FLSA collective action are not tolled by the filing of the complaint. Rather, the FLSA statute of limitations period for an opt-in, pursuant to 29 U.S.C. § 256(b), continues to run until the opt[-]in files a written consent to join the action."[79] "Accordingly, 'time is of the essence because "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in."'"[80]

Because of "[t]he unique procedural posture of FLSA actions,"[81] this Court has previously held that it is appropriate to apply the doctrine of equitable tolling to FLSA class members' claims due to any judicial delay in resolving a motion for conditional

---

[78]  Reply Brief, Doc. 15 at 6.

[79]  *Perez*, 2022 U.S. Dist. LEXIS 134161, at *32 (D.N.J. Jul. 28, 2022); *see also Tyger*, 832 F.App'x at 115 n.12 ("The applicable statute of limitations is particularly significant in FLSA collective actions because, unlike with class actions under Federal Rule of Civil Procedure 23, an individual plaintiff's claim is not considered 'commenced' until he opts into the lawsuit."); *Genesis*, 569 U.S. at 76 (Because "respondent had not yet moved for 'conditional certification' when her claim became moot," there was "simply no certification decision to which respondent's claim could have related back.").

[80]  *Perez*, 2022 U.S. Dist. LEXIS 134161, at *32.

[81]  *Hart v. Gov't Emps. Inc. Co.*, 609 F.Supp.3d 323, 330 (M.D. Pa. 2022).

certification.[82] In determining whether to apply equitable tolling, "the diligence of named plaintiffs is sufficient to warrant equitable tolling for opt-in plaintiffs."[83] Although the Court cannot grant equitable tolling at this time, it notes its willingness to consider a motion to equitably toll the limitations period for all opt-in class members upon a timely motion from Fuller, especially considering what may be unfair prejudice to the opt-in plaintiffs whose claims expire during the pendency of the conditional certification motion.

## III.    CONCLUSION

The parties agree that resolving the motion to compel arbitration requires fact discovery on arbitrability, so that motion is held in abeyance. Because Section 4 of the FAA requires resolving the disputed arbitrability of the sole named FLSA plaintiff's claims before his motion for conditional certification, Fuller's motion for conditional certification shall be stayed until the arbitrability issue is resolved. If the arbitrability issue is resolved in Fuller's favor and the Court considers his motion for conditional certification, the Court will allow Defendants the opportunity to brief on the motion rather than deeming it unopposed. The Court would also entertain a motion for equitable

---

[82] *Id.* at 329 (holding that "equitable tolling is permissible under the FLSA"), 330 ("The Court agrees with those courts that have held that judicial delay may be an appropriate basis to equitably toll the FLSA limitations period. Equitable tolling based upon judicial delay is particularly appropriate 'in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions.'")

[83] *Id.* at 330.

tolling at that point. To expedite the resolution of this arbitrability question, the Court

shall schedule a telephonic status conference. An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge