IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY FULLER, | No. 4:24-CV-01618 |
| Plaintiff, | Chief Judge Brann |
| v. | |
| CABINETWORKS MICHIGAN, LLC, THE CABINETWORKS GROUP, and CABINETWORKS GROUP, INC., | |
| Defendants. | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**NOVEMBER 7, 2025**

## I.  BACKGROUND

In September 2024, Plaintiff Jerry Fuller ("Plaintiff") filed a one-count complaint against Defendants, Cabinetworks Michigan, LLC, The Cabinetworks Group, and Cabinetworks Group, Inc. ("Defendants"), alleging a violation of the Fair Labor Standards Act.[1] Defendants filed a motion to compel arbitration and to stay the case in November 2024.[2] In December 2024, Plaintiff filed a motion for conditional certification of two classes.[3] Also in December 2024, Defendants filed a motion to stay any decision on the motion for conditional certification until after the

---

[1]  Doc. 1 (Compl.).
[2]  *See* Doc. 6 (Mot. to Compel Mediation/Arbitration and Stay the Case) at 2-3; Doc. 6-2 (Declaration); Doc. 6-3 (Exhibits to Declaration).
[3]  Doc. 8. (Mot. to Certify Class).

Court ruled on the motion to compel.[4] This Court resolved the motions in January 2025.[5] It granted the motion to stay, holding that Section 4 of the Federal Arbitration Act ("FAA") "prohibits the Court from reaching any of Plaintiff's motions" until a final determination has been made on whether Plaintiff agreed to arbitrate his claims.[6] Accordingly, the Court stayed Plaintiff's motion for conditional certification and held the motion to compel mediation/arbitration in abeyance "until a final determination is made as to whether Plaintiff is bound by the disputed arbitration agreement."[7] The Court ordered the parties to engage in limited discovery.[8] After the conclusion of discovery, Defendants filed a motion for summary judgment in April 2025.[9]

The Court denied summary judgment, noting two genuine disputes of material fact over 1) whether Plaintiff electronically signed Cabinetworks' Dispute Resolution Policy ("DPR") at his re-hiring in October 2022 and 2) whether Plaintiff received the DPR when signing other documents referencing the DPR at his initial hiring in June 2021.[10] A bench trial for these issues of fact was held on October 3, 2025. For the reasons enumerated below, Plaintiff's claims will be sent to arbitration.

---

[4] Doc. 12 at 1 (Mot. to Stay).
[5] Doc. 17 (Memo.); Doc. 18 (Order).
[6] Doc. 17 at 13.
[7] Doc. 18 ¶1.
[8] Doc. 21 (Order).
[9] Doc. 23 (Mot. for Summary Judgment).
[10] Doc. 35 (Memo.) at 17-18, 27; Doc. 36 (Order).

2

## II.     FINDINGS OF FACT

1. The Court finds that Defendants' proposed findings of fact are duly supported by the record, accurately and fully cite the trial transcript, and are reflective of the evidence as presented at the October 3, 2025 trial. Accordingly, the Court accepts and incorporates by reference Defendants' proposed findings of fact.[11]

2. The Court rejects Plaintiff's proposed findings of fact.[12]

3. The Court makes the following additional findings of fact:

    a. Plaintiff electronically signed the Dispute Resolution Program ("DRP") via Workday on 10/24/22.

    b. Plaintiff received a copy of the DRP at his orientation when he signed the Employee Handbook Acknowledgement ("the Handbook Acknowledgement") incorporating that form in 2021.

    c. Plaintiff's testimony to the contrary of the above two findings was not credible.

---

[11] Doc. 62 (Defendants' Prop. Findings of Fact). Defendants' accepted and incorporated findings of fact are appended to this opinion.

[12] Doc. 63 (Plaintiff's Prop. Findings of Fact). Plaintiff's proposed findings of fact contained several paragraphs that the Court does not explicitly find against, but that merely were not relevant to determining the issue. For all relevant, material provisions, the Court finds in favor of the Defendants. Accordingly, the Court rejects all of Plaintiff's proposed findings and accepts all of Defendants', even though some of Plaintiff's contentions are not explicitly disputed or incorrect.

### III. CONCLUSIONS OF LAW

"To determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts."[13] "When federal courts answer questions of state law, they rule as they predict the state supreme court would,"[14] "giv[ing] serious consideration to the decisions of the intermediate appellate courts."[15] As the party seeking to enforce the arbitration agreement, Defendants carry the burden of proof to show that a contract was validly formed[16] by a preponderance of the evidence.[17]

"Before concluding that there is a valid contract under Pennsylvania law, the court must 'look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration."[18] The second and third elements are not in dispute in the instant case,[19] as the arbitration provision in the DRP is

---

[13] *Kirleis v. Dickie, McCamey & Chilcote P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). An agreement to arbitrate is a contract. *Bucks Orthopedic Surgery Assoc. v. Ruth*, 925 A.2d 868, 872 (Pa. Super. Ct. 2005).

[14] *Gov't Emps. Ins. Co. v. Mt. Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 467 (3d Cir. 2024).

[15] *Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237, 242 (3d Cir. 1993) (citations omitted).

[16] *Blair v. Manor Care of Elizabethtown, PA*, 108 A.3d 94, 96 (Pa. Super. 2015). In their post-trial submission, Defendants once again raised the issue of which party carried the burden of proof. This time, they argued that the document was a forgery and, therefore, Plaintiff should carry the burden. The Court solicited pre-trial argument on *this very issue*, where Defendants declined to provide the Court with any such argument or legal support. Defendants have therefore waived the issue.

[17] *Gasbarre Prods. v. Smith*, 270 A.3d 1209, 1218 (Pa. Super. Ct. 2022).

[18] *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (quoting *ATACS Corp. v. Trans World Comms., Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)).

[19] Neither party has presented evidence or argument to dispute elements two or three.

sufficiently definite and not vague[20] and this mutual arbitration provision is in consideration of Plaintiff's employment.[21] As a result, the only element parties dispute is the first: whether Plaintiff manifested an intent to be bound. Defendants claim he did on two occasions: upon his first hiring in 2021 when he signed other papers referencing the DPR, and in 2022 upon his re-hiring when he allegedly electronically signed the DPR itself. The Court agrees.

### 1. The 2021 Signing of the Handbook Acknowledgement

The Court has found that Plaintiff received the DRP in his 2021 orientation prior to signing the Handbook Acknowledgement. The individual who conducted Plaintiff's orientation, Jennifer Rinker, testified that she passed out the standard orientation documents, which included the DRP, and made check marks on each new hire's checklist ("the Checklist") when she did so.[22] Moreover, the new hires signed the bottom of the Checklist.[23] Plaintiff's Checklist, with Ms. Rinker's handwriting and unique checkmarks, indicates that he received the DRP, as that document is checked off and he signed at the bottom.[24] Moreover, Ms. Rinker testified that she

---

[20] Defense Exhibit 8 ("DX8") at 4 ("If the dispute is not resolved through mediation, the dispute shall be resolved by exclusive, final and binding arbitration by the AAA.").
[21] *Keller v. Pfizer, Inc.*, No. 1:17-cv-1883, 2018 WL 5841865, at *2 n.1 (M.D. Pa. Nov. 8, 2018) ("[O]ffers of employment and mutual obligations to arbitrate are generally adequate consideration for agreements to arbitrate.").
[22] Doc. 61 (Trial Tr.) at 62:15–63:7; 65:9–67:23.
[23] DX9.
[24] *Id.*; Doc. 61 at 26:2-16; 63:13-19. Plaintiff agrees he received all other documents listed in the Checklist, arguing instead that, coincidentally, the only one absent from his packet was the one pivotal to the issue here. Doc. 63 at 5; DX9-15.

only checked off the DRP on the Checklist after she passed it out and went over it with new hires.[25] This is all in line with what Cheryl Walker, the HR Generalist, testified is the typical procedure for Defendants' orientation meetings.[26]

Both parties agree that Plaintiff signed the Employee Handbook Acknowledgement, which states "I further agree to the Dispute Resolution Policy, which is a separate, contractual obligation between the Company and me."[27] Ms. Walker testified that this Handbook Acknowledgement was typically signed before the orientation leader checked off the DRP on the Checklist.[28] Accordingly, based on the evidence presented at trial, the Court finds that Plaintiff received a copy of the DRP before he signed the Handbook Acknowledgement.

Parties can "incorporate by reference" external documents into an agreement when they specifically and clearly identify the document and expressly incorporate it into a different agreement.[29] The Handbook Acknowledgement satisfies the

---

[25] Doc. 61 at 65:14-18. Plaintiff now objects to this testimony as improper under Rule 406, an objection not made at trial and, thus, waived. Regardless, the Court would have overruled the objection as it finds the standard met to admit this evidence.
[26] Doc. 61 at 22:2-14.
[27] DX15; Doc. 62 at 7; Doc. 63 at 4.
[28] Doc. 61 at 31:15-19.
[29] *In re Estate of Atkinson*, 231 A.3d 891, 899 (Pa. Super. 2020) ("The terms of a contract include terms in documents that a signed contract document specifically and clearly identifies and expressly incorporates by reference."); *McCrossin v. Comcast Spectacor, LLC*, 331 A.3d 115, 1122 (Pa. Super. 2024) (noting that a similar dispute resolution clause referenced in a signed agreement bound the employee); *Standard Bent Glass v. Glassrobots OY*, 333 F.3d 440, 447 n.10 (3d Cir 2003). *But see Carr v. First Comm. Bank*, No. 1130 WDA 2021, 2023 WL 1794264, at *8 (Pa. Super. Ct., Feb. 7 2023) ("While parties to a contract may agree to incorporate by reference multiple documents into a single contract, a party cannot accept terms contained in other documents if that party did not receive them when he or she signed the contract.").

incorporation by reference requirements, as it both clearly identifies the DRP and expressly incorporates it. Moreover, the Handbook Acknowledgement form, like the DRP, meets the other two elements of contract formation, as it has sufficiently definite terms and is in consideration of Plaintiff's employment.[30]

Plaintiff, for the most part, does not dispute that parties may incorporate documents by reference, instead arguing that Plaintiff is not bound because he never received the DRP.[31] The Court has found, however, that Plaintiff did receive the DRP. Therefore, Plaintiff was bound to arbitrate his claim when he signed the Handbook Acknowledgement incorporating the DRP by reference.

### 2. The October 2022 Electronic Signature

Defendants have also met their burden to show that Plaintiff electronically signed the DRP in 2022. Defendants presented credible testimony demonstrating that the person who logged in to Plaintiff's account at 9:45 am on October 24, 2022

---

[30] *See Keller v. Pfizer, Inc.*, No. 1:17-cv-1883, 2018 WL 5841865, at *2 n.1 (M.D. Pa. Nov. 8, 2018) ("[O]ffers of employment and mutual obligations to arbitrate are generally adequate consideration for agreements to arbitrate.").

[31] In both pretrial and post-trial briefing, Plaintiff only argues cases that turn on the employee not receiving the document purported to be incorporated by reference. *See* Doc. 45 (Pretrial Memo.) at 4-7; Doc. 27 (Brief in Opp.) at 8-11; Doc. 63 (Proposed Findings of Fact) at 23-26. None of the cases Plaintiff provides offer support for the proposition that Plaintiff would not be bound even if he had received and read the DRP. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 165 (3d Cir. 2009) (finding no agreement to arbitrate when the plaintiff did not receive the arbitration agreement); *Quiles*, 879 A.2d 281, 286 (Pa. Super. Ct. 2005) (holding the same); *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 780 (3d Cir. 2013) (finding summary judgment improper because it was a factual question whether plaintiff received a copy of the agreement when signing); *Schuchmann v. Great American Power*, No. 3:23-CV-1604, 2024 WL 219267, at *3 (M.D. Pa. Jan. 19, 2024) ("Without any discussion or presentation of the arbitration clause, there could have been no meeting of the minds during which Plaintiff agreed to arbitrate.").

did so using Plaintiff's login credentials, including his new, unique password and challenge questions.[32] Defendants also presented evidence that Melissa Ashby, the only person Plaintiff points to as conceivably knowing his password, was likely not logging into Plaintiff's account at the relevant time.[33] Moreover, the Court cannot conceive of any motive that Ms. Ashby would have had to impersonate Plaintiff and sign these documents on his behalf. As such, Defendants have shown it is more likely than not that Plaintiff was the one who electronically signed the DRP in 2022.

Given that the Court has found that Plaintiff electronically signed this document, he can argue only that he does not remember signing it. However, that is not a colorable argument under the law of contracts; failure to read a contract before signing is not a defense to formation.[34] "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood."[35] Hence, Plaintiff's intent to be bound is evident, and element one is met. Therefore, the case should proceed to arbitration.

---

[32] Doc. 61 at 103:20-25.

[33] The audit data shows that Ashby had her own session of Workday open at the time of the logins. Doc. 61 at 111:2-11; 112:3-10; DX17.

[34] This fundamental principle is known to most 1L law students by the end of their first semester contracts class. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305 (1983); *Vinson v. Fitness & Sports Clubs, LLC*, 187 A.3d 253 (Pa. Super. Ct. 2018) *(*"It is well settled that 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'") (quoting *In re Estate of Olson*, 447 Pa. 483, 291 A.2d 95, 98 (1972)).

[35] *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990).

## IV. CONCLUSION

The Court has found against Plaintiff on both factual issues.[36] Either one would be sufficient to hold that the case should proceed to arbitration. Accordingly, Defendants' motion to compel arbitration is GRANTED.[37] Plaintiff is hereby directed to mediate/arbitrate his claims on an individual basis in accordance with the terms of the Dispute Resolution Program Agreement.

            BY THE COURT:

            *s/ Matthew W. Brann*
            Matthew W. Brann
            Chief United States District Judge

---

[36] *See* Brian Duignan, *Occam's Razor*, BRITANNICA (Sep. 6, 2025), https://www.britannica.com/topic/Occams-razor [https://perma.cc/2473-R3LF] (describing the principle of Occam's razor as "of two competing theories, the simpler explanation of an entity is to be preferred.").

[37] *See* Doc. 6 (Mot. to Compel Mediation/Arbitration and Stay the Case)